# CHARLESTON.

PARDEE *et al. v.* JOHNSTON *et al.*

Submitted March 29, 1910.   Decided February 13, 1912.

1. APPEAL AND ERROR—*Review—Harmless Error—Exclusion of Juror.*

    The exclusion of a juror for insufficient cause is not reversible error, if the twelve who are finally chosen to try the case are legally qualified.   (p. 349).

2. EVIDENCE—*Documentary Evidence—Attested Copy.*

    An attested copy of a deed from the records of a county court clerk's office in this state, is primary evidence, and has the same probative force, to prove title, that the original would have, if it had been introduced for that purpose.   (p. 350).

3. SAME—*Documentary Evidence—Parol Evidence Affecting Writings.*

    If such copy purports to be signed and sealed, and contains a scroll, or pen-flourish, following the name, or the official designation, of the grantor, it will be presumed that it was placed there by the recorder to represent a scroll which had been placed on the original, as and for a seal. Parol evidence is not admissible, in the absence of any charge of forgery, to prove that such scroll, or pen-flourish, was not intended by the recorder as a copy of the original.   (p. 350).

4. SAME—*Documentary Evidence—Authentications—Presumption.*

    A deed for land, made before the formation of this state, and recorded in the county wherein the land lies, for ten years or more before the bringing of a suit concerning the land, purporting on its face to have been made by a commissioner of delinquent and forfeited lands, under judicial proceedings in a court of Virginia, and purporting on its face to convey the title of certain persons therein, under such judicial proceedings, is, by sec. 2, ch. 76, Acts 1907, made *prima facie* proof of the grantor's au-

thority and of the actual passing to the grantee, of the title of such persons as it purports to pass.   (p. 351).

5.   DEEDS—*Construction—Questions of Law or Fact.*

Whether a written instrument has the effect to pass title, is a question of law for the court.   It is error to submit such question to the jury for their determination.   (p. 352).

6.   TRIAL—*Waiver of Objections to Reception of Evidence.*

If, in the trial of a case, improper testimony has gone to the jury over objection, and the court, before the jury retires, offers to strike it out, and the party who objected to its admission resists such offer and the court thereupon allows the evidence to remain in the case, such party will be held to have waived the error, if any, in admitting the evidence, and will not be heard to complain in this Court.   (p. 353).

7.   DEEDS—*Construction—Description of Property—Conflicting Descriptions.*

Where two inconsistent descriptions of land are given in a deed, one describing it as being a part of a certain larger tract, and the other describing it by metes and bounds, which carries it outside of such larger tract, the latter description, being the more specific one, will prevail.   (p. 353).

8.   EJECTMENT—*Proceedings—Verdict.*

If a plaintiff in ejectment sues for his entire tract of land, and proves title, and the defendant controverts his title to a part of it only, and does not disclaim as to the residue, a general verdict for the defendant is erroneous.   In such case the verdict should be for the plaintiff for so much of his land, at least, as was not actually controverted by defendant.   (p. 354).

9.   ADVERSE POSSESSION—*Operation and Effect—Constructive Possession.*

In the absence of actual adverse possession, constructive possession follows the older and better title to the full limit of the claimant's boundaries.   (p. 355).

10.   SAME—*Admision of Evidence..*

If a portion of the land, claimed under the older and better title, interlocks with a junior grant, and there has been no actual adverse possession, for the statutory period, within such interlock, it is error to admit evidence of the junior claimant's possession within the boundaries claimed by him, outside of the interlock.

Error to Circuit Court, Webster County.

Action by Barton Pardee and another against Aaron John-

ston and others.   Judgment for defendants, and plaintiffs bring error.

*Reversed and new trial awarded.*

*Haymond & Fox* and *Morton & Wocddell,* for plaintiffs in error.

*W. S. Wysong, Linn & Byrne,* and *B. P. Hall,* for defendants in error.

WILLIAMS, JUDGE:

Barton Pardee and G. W. Curtin brought ejectment in the circuit court of Webster county against Aaron Johnston, Wilson Lee Camden, and The Camden Lumber Company, a corporation, which resulted in a verdict and judgment for defendants, on the 23rd of April, 1909, and plaintiffs have brought the case here on writ of error.

The first assignment of error relates to the court's action in rejecting G. L. Brady, and ten other drawn jurors, when making up the panel.   This is not error.   If the twelve who tried the case were made up from the regularly drawn jury list, and were qualified, plaintiffs have no cause of complaint.   They were not entitled to have certain jurors try the case, they were only entitled to twelve qualified men, and the record shows that the jurors who tried the case were qualified.   The rejected jurors were related to one S. B. Hamrick who had granted to G. W. Curtin, one of the plaintiffs, the land in controversy, and had covenanted to warrant generally the title thereto.   But, regardless of any question respecting their qualification, the court did not abuse its discretion in rejecting them.

Plaintiffs' title originates by deed from John Brown, commissioner of delinquent and forfeited lands of Nicholas county, dated October 10, 1844, to James Burne, who, as it appears from the recitals in the deed, was assignee of Levi J. Hooker, assignee of William Given, the purchaser at the commissioner's sale.   A certified copy of this deed from the records of Nicholas county, containing the following *fac simile* of the grantor's signature, official designation, and scroll, as it appears on the record of deeds, was offered in evidence, viz.:

The grantor concludes his deed with this sentence: "In witness whereof the said party of the first part hereunto set his hand and seal the day, and year first above written," and the clerk before whom it was acknowledged for recordation, in his certificate of acknowledgment, designates the instrument as a "deed of bargain and sale."

Two objections were made to the sufficiency of this paper as evidence of title, viz: (1) Because it did not have a seal, and (2) because it did not appear that the commissioner had authority to make the deed to James Burne, there being no proof that Given, to whom the sale was made and confirmed, had authorized him to do so. As to the first objection: True, the original deed was not produced. But sec. 5, ch. 130, Code 1906, makes a copy from the office, attested by the clerk, evidence in lieu of the original. The effect of the statute is to make the copy primary evidence, and to give it as much probative force as the original deed could have had. *Robinson* v. *Pitzer,* 3 W. Va. 335. The law presumes that the clerk performed his duty in copying the original into the record, that he omitted no essential part which appeared on the original deed, and added no material part to the record which did not appear on the original. The scroll affixed by way of seal to a deed being essential to give effect to the instrument as a grant of land, it must not be presumed that a scroll, or flourish, appearing upon the clerk's record, which would serve as a seal, if it appeared on the original, was added by the clerk, upon the record. The record speaks as a verity, and the law presumes that such essential part, appearing on the record, is a copy or

representation of what appeared on the original. *Wilson* v. *Braden,* 56 W. Va. 372. Consequently, the scroll, or pen-flourish, appearing at the end of the above *fac simile* of the clerk's record, must be taken as a representation of what appeared on the original paper presented for recordation, as much so as the grantor's name, or any other word in the deed.

The custom of sealing written instruments originated at a time when few men could write, and when they used stamps to make impressions upon wax, technically called a seal, instead of writing their names, and, notwithstanding the reason for the custom no longer exists, the law continues the senseless custom. But, as a substitute for the old wax seal, the statute, ch. 13, sec. 15, Code 1906, permits a person to affix to a paper "a scroll by way of seal, or (to) adopt as his seal any scroll, written, printed or engraved, made thereon by another." One of the definitions of the word "scroll" given in Webster's Dictionary, is "A flourish, tracing, mark or design used in place of a seal." It will be observed, too, that the statute does not require the scroll to have any particular form, or to be placed at any particular point with respect to the name of the party adopting it. A scroll appearing immediately after the name of one person may be adopted by another whose name may appear on the instrument below the first name. *Wilson* v. *Braden,* 56 W. Va. 373; *Norvell* v. *Walker,* 9 W. Va. 447. See also as apropos to the question here discussed, the following authorities: *Smith* v. *Henning,* 10 W. Va. 599; *Carper* v. *McDowell,* 5 Grat. 212; *Cosner* v. *McCrum,* 40 W. Va. 339; *Miller* v. *Holt,* 47 W. Va. 10. Our conclusion, therefore, is that the certified copy of the deed of John Brown, commissioner, contains a scroll, and is intended to represent a scroll which was affixed to the original as a seal.

The second objection to the deed might have been a fatal one had it not been for the effect of a recent statute designed to constitute deeds of commissioners, under judicial proceedings, which have been recorded for more than ten years, *prima facie* evidence of the passing of the title of all persons whose title such deed purports to pass. We have reference to sec. 2, ch. 76, Acts 1907, which reads as follows: "That when any deed has heretofore been made prior to the formation of this state

for land or any interest in land therein, which purports on its face to be made under judicial proceedings of a court of the state of Virginia by a commissioner, special commissioner, guardian or other person, or when any deed has heretofore been made or shall hereafter be made for land or any interest in land in this state which purports on its face to be made by a commissioner, special commissioner, guardian or other person under the judicial proceedings of a court of this state, then in every such case it shall be presumed, in the absence of evidence to the contrary, that the person executing such deed was authorized by the court to convey the land or interest therein which is conveyed by such deed, and if any such deed was duly, or shall hereafter be duly admitted to record in any county, and not less than ten years shall have elapsed after such record thereof, it shall be presumed, in the absence of evidence to the contrary, that the title of all persons which said deed professes to convey, under such judicial proceedings, did in fact pass by such deed."

The deed in question was made in 1844, and was recorded in Nicholas county on the day of its date. The statute was in effect before this suit was brought, and, there being no evidence to the contrary, it must be presumed that the commissioner had authority to pass, and did pass, not only the title of the state, but also the title of William Given, the purchaser, and of his assignee Levi J. Hooker, to the grantee, James Burne. See *Feder* v. *Hager,* 64 W. Va. 452 and *Despard* v. *Pearcy,* 65 W.Va. 140, wherein the effect of the statute is discussed, although held not to apply in those cases.

No objection appearing to any other deed in plaintiffs' chain, their paper title, connecting with the commonwealth of Virginia, seems to have been proven. It, therefore, follows, that the court erred in admitting testimony of witnesses in regard to the appearance, on the records of Nicholas county, of other deeds made by the same clerk who recorded the Brown deed, for the purpose of proving that the original bore no seal. That was a question of law to be determined by the court from the appearance of the certified copy, and not a question of fact to be determined by the jury from extrinsic evidence.

It follows, also, that the court erred in modifying certain ones of plaintiffs' instructions, by therein describing their title

as a "claim of title." This was a reflection upon their title which appears to be good. It was also error to submit the question of plaintiff's title to the jury. Being purely a paper title, it was a question of law for the court, not one of fact for the jury.

Another assignment of error relates to the admission of the testimony of Pat Griffith and J. H. Hamrick, to prove a certain statement claimed to have been made by S. B. Hamrick, a witness for plaintiffs, when the survey was made in this suit, and denied by him on cross-examination, relative to an alleged admission made by one Bernard Mollohan, who was then dead, and who had many years ago surveyed plaintiffs' land, to the effect that said Mollohan had not by his survey, properly located a certain sugar tree corner now claimed by plaintiffs as one of their corners. Without deciding whether, or not, this was error, but assuming that it was, plaintiffs waived it by declining to permit the court to strike it out, which it proposed to do, as appears from plaintiffs' bill of exceptions No. 1.

Defendants claim title, mediately from the commonwealth of Virginia, by two deeds made by David Goff, commissioner of delinquent and forfeited lands for Randolph county, one to John S. Hoffman, dated 26th April 1846, for four 1000 acre tracts, and the other to Jacob W. See, dated 5th May 1850, for one 1000 acre tract, which five tracts were laid off by said commissioner out of a 5000 acre tract known as one of the Pennell grants, and forfeited to the state of Virginia in the name of Benjamin Nichols, Joseph A. Nichols and Able Hawley. Defendants' land is known as Pennell lot No. 24, and plaintiffs' land was laid off by Brown, commissioner of delinquent and forfeited lands for Nicholas county, out of an adjoining Pennell grant known as lot No. 21. But plaintiffs claim that, in surveying the land, commissioner Brown encroached upon lot No. 24, and actually surveyed and granted a part of it to James Burne, notwithstanding he described it as being in lot No. 21. There is evidence in the record supporting this theory, and if this theory was believed by the jury to be proven, they should have found for plaintiffs. Because title to both tracts was then in the state by forfeiture, and there is no proof of adverse possession upon the interlock for sufficient time to ripen the claimant's possession into a good title. Plaintiffs' title, being the

older, would prevail in law. Assuming that there are two inconsistent descriptions in Brown's deed, one by metes and bounds which carries it over onto Pennell lot No. 24, and the other, as being a part of lot No. 21, this would not estop plaintiffs from claiming to the extent of the metes and bounds actually made on the ground, and accurately described in the deed to James Burne. In such case the general description must yield to the one by metes and bounds, the particular description. *Bowyers* v. *Dickinson,* 30 W. Va. 709; *Guinn* v. *Schwartz,* 32 W. Va. 487; *South Penn Oil Co.* v. *Knox,* 68 W. Va. 362.

The court submitted both the question of plaintiffs' title, and the identity of their land to the jury, and their verdict is simply a finding for the defendants, without more. It is, therefore, impossible for us to see whether they so found, because they were of the opinion that plaintiffs had not proven title, or because they had failed to prove the location of their boundary lines. The jury had no right to pass upon title, this was a question of law, erroneously submitted to them by the court. But notwithstanding the jury may have been justified in finding that plaintiffs' boundary line was located as contended for by defendants, their verdict settles nothing as to boundaries. Plaintiffs proved good title to the whole of their boundary, it remained only for them to prove the location of their boundaries. Defendants did not controvert by proof, plaintiffs' claim to the greater part of their land, and filed no disclaimer. In view of these facts the verdict is contrary to the law and the evidence, and the court erred in not sustaining plaintiffs' motion to set it aside. The verdict should have been for the plaintiffs for so much of their land as lies within their boundary lines, and should have defined those lines with sufficient accuracy for their identification. Sec. 25, ch. 90, Code 1906, reads, "When the right of the plaintiff is proved to all the premises claimed, the verdict shall be for the premises generally, as specified in the declaration: but it be proved to only a part or share of the premsies, the verdict shall specify such part particularly as the same is proved, and with the same certainty of description as is required in the declaration." Plaintiffs proved, beyond question, title to most of the land described in their declaration, and, there being no disclaimer, the verdict should have been for the plain-

tiffs, for so much of their land, at least, as defendants did not controvert. True, the statute permits only the general issue to be pleaded in ejectment, but still if defendants desired to eliminate a portion of the land from the controversy, they could narrow its scope by filing a disclaimer, and this they should have done; and not having done so, issue was joined upon the whole of the land described in plaintiffs' declaration. This point seems to be settled by the following authorities: *Wilson* v. *Braden,* 48 W. Va. 196; Warvell on Ejectment, sec. 211; *Carrington* v. *Goddin,* 13 Grat. 587; *Clay* v. *White,* 1 Munf. 162; *Slocum* v. *Compton,* 93 Va. 374, 25 S. E. 3; *Norvell* v. *Camm,* 2 Rand. 68; *Beckwith* v. *Thompson,* 18 W. Va. 103; *City of Quincy* v. *Railroad Co.,* 94 Ill. 537.

Plaintiffs did not know how much of their land defendants claimed, and, therefore, the only way in which they could safely bring their suit was for their whole tract. It thereupon became defendants' duty to ascertain their boundaries, and to disclaim what was outside of them, if they wished to avoid the effect of joining issue as to all of plaintiffs' claim. A disclaimer is necessary, in such case, in view of the statute which allows only the plea of not guilty. A disclaimer is not, tecnically speaking, a plea. A plea tenders issue, a disclaimer is a refusal to join issue. A plea to the general issue, without disclaiming, makes an issue of all the land described in the declaration, and a finding for defendant, on such issue, concludes title, then vested in plaintiff, against him, in any subsequent controversy over the same land, between the same parties, and their privies. The judgment in this case, is that "plaintiffs take nothing," which evidently means, that they take none of the land described in their declaration. Plaintiffs' last state, therefore, seems to be worse than their first.

In view of what we have said it was error to admit evidence as to defendants' possession of their own land outside of the interlock. Plaintiffs' title being the older, and, therefore, the better, would prevail. Defendants' possession outside of the interlock can not affect plaintiffs' title to it. Constructive possession always follows the better title, and the only possession that can defeat it is actual, adverse possession for the statutory period. *Olinger* v. *Shepherd,* 12 Grat. 462; *Garrett* v.

*Ramsey,* 26 W. Va. 345; *Camden* v. *West Branch Lumber Co.,* 59 W. Va. 148. According to the evidence disclosed by the record, plaintiffs' right to recover depends solely upon the proof of the location of their boundary lines.

The judgment will be reversed, the verdict set aside and a new trial awarded.

### ON PETITION FOR REHEARING.

In their petition for a rehearing, counsel for defendants in error call our attention, for the first time, to a variance between plaintiffs' allegations and their proof. In their declaration Barton Pardee and G. W. Curtin are declared to be joint owners in fee of the land. It contains but one count, which is joint, while the proof shows title to be in one of the plaintiffs only. This was a variance of which advantage might have been taken in the court below. But the attention of the trial court seems not to have been called to it in any way; and it is too late to make the objection for the first time in this Court. If the point had been raised in the lower court, plaintiffs would have had the right to amend their pleadings. Final judgment should not be rendered against them before giving them an opportunity to cure the objection by amendment. The failure to take advantage of the variance in the lower court is a waiver of the right to do so in this Court. Sec. 8, ch. 131, Code 1906; *Trump* v. *Tidewater,* 44 W. Va. 238; *Bertha Zinc Co.* v. *Martin's Admr.,* 93 Va. 791, 22 S. E. 769; *Moore Lime Co.* v. *Johnson's Admr.,* 103 Va. 84.

No other points are discussed in the petition for rehearing that are not considered in the opinion. A rehearing is refused.

*Reversed, and New Trial Awarded.*