MATHEW S. HOLT v. CITY OF WESTON, *a Municipal Corporation.*

(No. 6863)

Submitted February 17, 1931.   Decided February 24, 1931.

*Kenneth S. Kurtz, Robert L. Bland,* and *W. E. R. Byrne,* for plaintiff in error.

*Edward A. Brannon,* for defendant in error.

LIVELY, JUDGE:

This is an action of trespass on the case in which plaintiff seeks to recover damages from the City of Weston for injuries to his property. The lower court sustained a demurrer to plaintiff's declaration, and plaintiff asks this Court to reverse that judgment.

The declaration alleges that on February 1, 1924, and for a long time before plaintiff's property became a part of the City of Weston, plaintiff was the owner in fee of a lot or parcel of land in Lewis County, which adjoined the Parkersburg and Staunton Turnpike for a distance of 98 feet; that the topography of property in that vicinity was of a sloping character, so that the water from the higher side of the road drained on the properties on the lower side of the road (where plaintiff's property was situate) without injuring said properties; that the county court of Lewis County built a brick road and caused a stone or concrete curb to be placed along the lower side of the turnpike, which was lower in front of plaintiff's property than the properties on either side thereof for a distance of 250 feet in each direction, and that said curb and paving prevented the water from flowing from the upper side of the road in a natural course, but gathered the water and carried it for a distance of about 500 feet to and in front of plaintiff's property; and that by means of a culvert built under and across the road the water was carried through and under said road and discharged upon plaintiff's property, which is several feet lower than the road, by means of two small tile openings placed through the curb. Shortly thereafter the City of Weston incorporated as a part thereof

the road and plaintiff's property, and the City of Weston, knowing the condition, permitted the culverts to remain in the street and continued to discharge water on plaintiff's property, and refused to extend said culvert through plaintiff's lots to a creek, by reason whereof water and filth covering the land, have rendered it unfit for any purpose and that said lot was rendered worthless, all of which is to plaintiff's damage to the amount of $1,000.00.

The lower court sustained the demurrer on the ground that the defendant city was not chargeable with the entire damage sustained, which, in its opinion, plaintiff seeks by his declaration.

It is the theory of appellant that he seeks recurring, and not permanent, damages. Plaintiff relying on that portion of the declaration which states that the City of Weston "suffered and permitted said culverts to remain in said street and continued to accumulate said water in front of said property and discharge the same in a body on the lot and property of the plaintiff, and remain thereon and inundate and cover the same, and let said water remain on said lot, and overflow and cover the same," argues that the condition is an abatable nuisance which may be so remedied as to occasion no further injury.

The distinction between permanent and recurring damage was stated in *Hargreaves* v. *Kimberly,* 26 W. Va. 787, 799, and quoted with approval in the recent case of *Byrne* v. *Public Service Company,* 106 W. Va. 594,597. In the former case it was stated that "where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action." The right to recover recurring damages contemplates an abatable nuisance; and the rule which effects judicial process to abate a nuisance created by a private corporation does not obtain where the condition arises through the acts of a public or quasi public corporation for it has been uniformly held by this Court that the acts of a public corporation working injury and damage to private properties, not involving or amounting to a taking thereof, cannot be enjoined or abated

as a nuisance. *Watson* v. *Fairmont Railroad Co.*, 49 W. Va. 528; *Bartlett* v. *Chemical Co.*, 92 W. Va. 445, 452. The reason for this distinction is clear, since a public corporation, under its right of eminent domain may acquire the franchise to take property or damage it and the injured party is protected under Article 3, section 9 of the State Constitution which prohibits the taking or damaging of private property for public use without just compensation therefor.

It is true that in *Henry* v. *Ohio River R. R. Co.*, 40 W. Va. 234, when the defendant made an embankment in a street on which to lay its track and so negligently constructed it as to close a culvert already there for passage of water and by reason thereof at times water from snow and rain collected and flooded an adjoining lot, the court stated: "Now this embankment has the element of permanency, it is true, and that far complies with the rule warranting recovery of past and future damages in one action, but it does not necessarily per se injure the plaintiff's property in respect to the mode of injury charged; that is overflow. That happens only when rains or snows come." The precise question in that case was whether the statute of limitations began to run from the building of the embankment or from the actual flooding; but JUDGE BRANNON, who wrote the opinion, merely mooted the question of recovering damages and applied the general rule as to nuisances, without considering the rule that a private nuisance created by a public body, acting within the scope of its authority, could not be abated.

There is no charge in the declaration that injury has occurred by reason of any positive act of defendant. The gist of the wrongful conduct of the defendant is nonaction, the result of which has been to occasion plaintiff to abandon the land "for cultivation, agricultural purpose, and for building purposes" and to render the land "worthless", which "by the wrongful act and conduct of the defendant had been injured and damaged in the manner hereinbefore stated to the amount of $1,000.00." There is no allegation as to the time the road was constructed or when the boundaries of the city of Weston were extended so as to incorporate therein that portion of the road which adjoins plaintiff's property;

but the declaration charges that "in constructing said road
* * * the water was turned on plaintiff's lot", prior to the
time when the corporate limits of the defendant city were
extended. The damage to plaintiff's property was first com-
mitted by the county court of Lewis County. In fact, the
very manner in which the road had been constructed—the
culverts and the placement of the tiles in the curbing in
front of plaintiff's property (which was several feet lower
than the road)—contemplated some damage to plaintiff's
property by reason of rain and melted snow. True, if there
were no rain or snow, no actual damage would result; but
these were anticipated; and the allegations themselves aver
that the water was thrown upon plaintiff's land in construct-
ing the road. So, when the first injury occurred, plaintiff's
right to enjoy his property was violated. At that moment,
if not before, he could have invoked the right afforded him
under section 9, article 3 of our State Constitution to com-
pensation for damages committed. The road constructed is
permanent, and the legal right to maintain the road as con-
structed made the injury permanent in the legal sense of the
term. If suit had been instituted against the county court
at the time of the injury, or if the county court had elected
to institute condemnation proceedings to acquire the requisite
franchise to discharge accumulated water upon plaintiff's
property, the damages would then have been assessed once
for all and would have been a bar to any subsequent action.
In other words, the instant plaintiff's property was first in-
jured, a cause of action arose; the injury, permissive under
the power of eminent domain, was complete. The jury, in
considering the damages might have considered the expense
necessary to construct the culvert which plaintiff now com-
plains the defendant refused to construct. Plaintiff's coun-
sel, in their brief, argue that any language importing perma-
nency of injury used by plaintiff in the declaration should be
treated as surplusage; but it is to be remembered that the
language of the declaration is to be strongly construed
against the pleader    (*Rhine* v. *Morris*, 99 W. Va. 52, 53).
. The principle applied in *Byrne* v. *Public Service Company*,
*supra*, is applicable hereto. Being of the opinion, therefore,

that plaintiff seeks permanent and original damages, we sustain the conclusion of the lower court on demurrer.

*Affirmed.*